UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID WILLIAMS,

                            Plaintiff,

v.                                                            3:13-CV-0897
                                                                    (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,

                            Defendant.
_____

APPEARANCES:                                                      OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.               SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by David Williams ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 17.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

**I.     RELEVANT BACKGROUND**

   **A.     Factual Background**

Plaintiff was born on February 28, 1971. Plaintiff completed a high school education. His most recent employment included a series of small jobs. Plaintiff concedes he has no past relevant work. Generally, Plaintiff's alleged disability consists of bipolar disorder, attention deficit hyperactivity disorder (ADHD), substance abuse disorder, hypertension, hepatitis C, mild right ankle degeneration and obesity. His alleged disability onset date is October 31, 2011, and his date last insured is June 30, 2012.

   **B.     Procedural History**

On January 6, 2012, Plaintiff applied for Social Security Disability Insurance and on April 24, 2012, Plaintiff applied for Supplemental Security Income. Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 26, 2013, Plaintiff appeared at a video hearing before the ALJ, Elizabeth W. Koennecke. (T. 32-46.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on March 26, 2013 (T. 11-31.) On July 12, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   **C.     The ALJ's Decision**

Generally, in her decision, the ALJ made the following nine findings of fact and conclusions of law. (T. 17-27.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (T. 17.) Second, the ALJ found that, during the

2

relevant time period, Plaintiff's polysubstance abuse and mood disorders were severe impairments, but that Plaintiff's physical impairments were not severe. (T. 17-18.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18-20.) The ALJ considered Listings 12.04 and 12.09. Fourth, the ALJ found that Plaintiff has

> the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels and retains the ability (on a sustained basis) to constantly understand, carry out, and remember simple instructions; to occasionally respond appropriately to supervision, co-workers, and ususal work situations; and to constantly deal with changes in a routine work setting.

(T. 20-22.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 22.) Sixth, the ALJ found that, considering Plaintiff's age, education, work experience and RFC based on all of his impairments, including the substance abuse disorder, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 22-23.) Seventh, the ALJ found that, if Plaintiff stopped the substance use, he would have the RFC

> to perform a full range of work at all exertional levels and retain the ability (on a sustained basis) to constantly understand, carry out, and remember simple instructions; to frequently respond appropriately to supervision, co-workers, and ususal work situations; and to constantly deal with changes in a routine work setting.

(T. 24-26.) Eighth, the ALJ determined that, if Plaintiff stopped the substance abuse, considering his age, education, work experience and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform. (T. 26-27.) Ninth, and finally, the ALJ concluded that, Plaintiff's substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. (T. 27.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ improperly determined Plaintiff's RFC if he stopped his substance abuse. (Dkt. No. 14 at 6-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (*Id.* at 12-15.) Third, Plaintiff argues that the ALJ failed to follow the treating physician rule. (*Id*. at 15-17.) Fourth, Plaintiff argues that the ALJ failed to elicit the testimony of a vocational expert. (*Id*. at 18-20.) Fifth, and finally, Plaintiff argues that the ALJ failed to consider Plaintiff's many low Global Assessment Functioning ("GAF") scores. (*Id.* at 20-22.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly found that Plaintiff's alcohol abuse was a material factor to a finding of disability. (Dkt. No. 17 at 9-18 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly considered Plaintiff's subjective symptomalogy. (*Id.* at 18-20.) Third, and finally, Defendant argues that the ALJ's burden at step five of the sequential analysis was met. (*Id*. at 20-22.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial

evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different

result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). Pursuant to the Contract with America

Advancement Act, "[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." *Cage*, 692 F.3d at 123 (citing Pub. L. 104-121, 110 Stat. 847 (codified at 42 U.S.C. § 1382c (a)(3)(J))). Therefore, the ALJ must decide "[t]he critical question" of "whether . . . [the claimant would still be] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1); *see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). It is the claimant who bears the burden of proof on the issue of whether her drug addiction or alcoholism is material. *See Cage*, 692 F.3d at 123-125.

## IV. ANALYSIS

### A. Whether the ALJ Erred in Failing to Apply the Treating Physician Rule When Weighing the Opinions of Dr. Ashai and Dr. Rahman

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 15-17 [Def.'s Mem. of Law].) The Court would add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of

the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

> The regulations define a treating physician as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Deference to such a medical source is appropriate because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." Id. § 404.1527(c)(2).

*Randolph v. Colvin*, No. 12-CV-8539, 2014 WL 2938184, at *8 (S.D.N.Y. June 30, 2014).

Plaintiff argues that the ALJ erred in failing to discuss the clinical findings and observations of psychiatrist, Dr. Shaista Ashai, M.D., and consequently erred in failing to explain the weight assigned to Dr. Ashai's opinion. Plaintiff further argues that the ALJ erred in giving less weight to the February 11, 2013 opinion of Plaintiff's treating psychiatrist, Mahfuzur Rahman, M.D., because it is purportedly inconsistent with the treatment notes, but fails to address the weight assigned to Dr. Rahman's evaluations as a whole.

Defendant argues that Dr. Ashai is not a treating physician and that, in any event, she did not provide an opinion. Defendant further argues that, nonetheless, the ALJ did refer to Dr. Ashai's treatment notes from Plaintiff's emergency room visit in her decision. Regarding Dr. Rahman's February 11, 2013 opinion, Defendant notes that the report of Plaintiff's limitations

8

are provided "per client report," indicating that it is not an objective medical opinion. Moreover, Defendant argues that the opinion was properly accorded less than controlling weight because it is inconsistent with Dr. Rahman's own treatment notes as well as the report of consultative examiner, Dr. Kevin Duffy, Psy. D.

To be sure, Dr. Ashai does not meet the definition of a treating physician, having treated Plaintiff only once over a three day period after he presented in the emergency room with suicidal ideation. (T. 230-233.) Also, the ALJ clearly considered Dr. Ashai's report in determining that Plaintiff's polysubstance abuse disorder is severe, noting that at the time of his admission, he had stopped taking his medications and had reported using alcohol, marijuana and heroin. (T. 18.) In support of her RFC determination, the ALJ noted that while Plaintiff completed substance abuse treatment in 2009, by the time of his hospitalization and treatment by Dr. Ashai in 2011, Plaintiff had stopped taking his medications and relapsed on drugs and alcohol. (T. 20.) Moreover, other than Dr. Ashai's reported diagnostic impression of Bipolar Disorder Type I, Alcohol Abuse and Heroin Abuse, there is no opinion offered regarding Plaintiff's functional limitations. For these reasons, the ALJ did not err in failing to weigh Dr. Ashai's report.

Dr. Rahman, together with Licensed Clinical Social Worker ("LCSW"), Patricia Jordan, completed a mental RFC questionnaire on February 11, 2013, indicating that, for the period from April 12, 2012 through February 11, 2013, Plaintiff is markedly limited in the ability to maintain attention and concentration for extended periods of time and that he is moderately to markedly limited in the ability to respond appropriately to ordinary stressors in a work setting. In addition, Dr. Rahman indicates that Plaintiff is moderately limited in the following six areas: (1) the ability to perform activities within a schedule, maintain regular attendance and/or be punctual within

9

customary tolerances; (2) the ability to sustain ordinary routine without supervision; (3) the ability to complete a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) the ability to interact appropriately with the general public; (5) the ability to accept instructions and respond appropriately to criticism from supervisors; and (6) the ability to respond appropriately to changes in the work setting. Finally, Dr. Rahman indicates that Plaintiff would reasonably be expected to be absent from work more than three times per month due to the combination of Plaintiff's mental impairments and the side effects of his medications. Dr. Rahman also indicated that these limitations are "per client report." (T. 374-376.)

On March 7, 2013, LCSW Jordan completed a mental RFC form, specifically addressing the question of whether Plaintiff "would still have a disabling mental illness despite any drug and/or alcohol abuse, i.e., whether [Plaintiff] would have an independent disabling mental illness if drugs and/or alcohol were not a material factor AND/OR whether it is possible to distinguish between [Plaintiff's] drug and/or alcohol use and [his] mental illness." (T. 377.) Ms. Jordan responded that, for the period from September 8, 2009 through March 7, 2013, Plaintiff "has a poor work history related to mental health problems [and] has extreme problems with concentrating and would have difficulty maintaining a regular schedule/attendance due to his mental health symptomalogy." (*Id.*) Ms. Jordan also opined that Plaintiff "has been clean for [one] year and while substance abuse can exacerbate mental health problems these problems have been constant for many years. [Plaintiff's] mental health problems would be present even when he is abstinent." (*Id.*)

The ALJ assigned less weight to Dr. Rahman's February 11, 2013 opinion in part because it appears to be based solely on Plaintiff's subjective report as well as LCSW Jordan's March 9, 2013 opinion because she is not an acceptable medical source.

To be sure, it is error to fail to give controlling weight to the opinion of a treating physician because it is based on the physician's reliance on the subjective complaints and reports of his patient, which the Second Circuit has called "an essential diagnostic tool." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool."). In addition, while it is true that Licensed Clinical Social Workers are not "acceptable medical sources," for purposes of determining the existence of a medically determinable impairment, evidence from such other sources "may provide insight into ... how [an impairment] affects the individuals ability to function."[1] Moreover, opinions from medical sources that are not considered acceptable medical sources, such as Licensed Clinical Social Workers, are "important and should be evaluated on key issues such as ... functional effects [of an impairment]." *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009). The Regulations provide that the Secretary will consider, "evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. § 404.1513(e). In weighing the opinions of "other sources", the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(c). *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp.

---

[1] *See Wright v. Colvin*, No 12-CV-0440, 2013 WL 3777187, at *4 (N.D.N.Y. July 17, 2013) (citing 20 C.F.R. § 416.913(a), (d)(1); SSR 06–03p, 2006 WL 2329939, at *2–3 (S.S.A. 2006)).

11

2d 335, 344 (E.D.N.Y. 2010).

However, those considerations aside, here, the ALJ correctly concluded that Dr. Rahman's and LCSW Jordan's opinions were inconsistent with their own treatment notes. For example, LCSW Jordan indicated that as of April 12, 2012, Plaintiff was "in early remission" and Dr. Rahman indicated on May 1, 2012 that Plaintiff has an extensive history of substance dependence, including marijuana, heroin and crack cocaine, and that, as of that date, Plaintiff was not taking any medications. (T. 278-283.) Also, between August, 2012 and January 2013, Dr. Rahman's treatment notes indicated that Plaintiff was on medication and continued to make "some progress." (T. 298-310.) As of October 2012, Dr. Rahman noted that Plaintiff's mood was only "mildly depressed" and in November 2012, treatment notes indicate that Plaintiff had no psychiatric complaints and he had made significant progress toward mood symptom reduction with improved insight and judgment. (*Id*.)

Also, the ALJ correctly noted that the opinions of Dr. Rahman and LCSW Jordan are inconsistent with other record evidence. For example, on June 27, 2012, after examining Plaintiff, consultative examiner, Dr. Kevin Duffy reported that Plaintiff "can follow and understand simple directions and instructions, . . . perform simple tasks independently, . . . generally maintain attention and concentration, . . . maintain a regular schedule, . . . learn new tasks, . . . perform complex tasks independently, . . . relate adequately with others, . . . [and] generally deal appropriately with stress." (T. 254.) Dr. Duffy further opined that Plaintiff "may have some difficulty making appropriate decisions at times because of his substance abuse problems." (*Id.*)

For these reasons, the ALJ did not err when she assigned less than controlling weight to the opinions of Dr. Rahman and LCSW Jordan.

## B. Whether the ALJ Properly Calculated Plaintiff's RFC, Including a Proper Consideration of Plaintiff's GAF Scores

After carefully considering the matter, the Court answers this question in the affirmative generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 9-18 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ's RFC determination was erroneous because (1) there is no evidence that his bipolar disorder, anxiety or depression are related to substance abuse, and, to the contrary, Plaintiff's substance abuse disorder is a consequence of his anxiety and depression; and (2) the ALJ erred in failing to consider Plaintiff's many low GAF scores. Defendant counters that (1) the ALJ's RFC determination is supported by substantial evidence and (2) the ALJ's failure to mention every one of Plaintiff's GAF scores in the her decision does not mean she did not consider them, and, in any event, Plaintiff's GAF scores after his onset date were consistent with the moderate limitations included in the ALJ's RFC, absent substance abuse.

RFC is defined as

> what an individual can still do despite his or her limitations ... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory

13

and other requirements of work." *Domm v. Colvin*, No. 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. *See* 20 C.F.R. §§ 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work. *See* 20 C.F.R. § 404.1513(c)(d).

An ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). Further, when determining the Plaintiff's RFC, the ALJ is required to consider all of Plaintiff's medically determinable impairments including those that are not severe. *See Tudor v. Comm'r of Soc. Sec.*, No. 12-CV-2795, 2013 WL 4500754, at *11 (E.D.N.Y. Aug. 21, 2013) (citing 20 C.F.R. § 404.1545(a)(2)).

Here, the ALJ considered Plaintiff's history of substance abuse as well as his history of mental illness and correctly determined that, if Plaintiff stopped the substance abuse, he would have the RFC

> to perform a full range of work at all exertional levels and retain the ability (on a sustained basis) to constantly understand, carry out, and remember simple instructions; to frequently respond appropriately to supervision, co-workers, and ususal work situations; and to constantly deal with changes in a routine work setting.

(T. 24-26.) The ALJ correctly noted the record evidence that when Plaintiff abstains from alcohol and drug use, his mood improves and he has intact attention, concentration and memory skills. (T. 25 [citing T.278-283, 254, 298-310].) Moreover, regarding Plaintiff's GAF scores, it

14

is notable that in December of 2009, after successful completion of treatment at the Addiction Center of Broome County, Plaintiff's GAF was 60, pursuant to the notes of the certified alcoholism and substance abuse counselor. (T. 214.) In September of 2011, a physician assistant at the Hampton-Newport News Community Service Board noted that Plaintiff was taking his medications and abstaining from alcohol for over four months. At that time Plaintiff reported that he has been working and feeling good, with no problems with depression or any major mood swings. Plaintiff's GAF was assessed at 60. (T. 373.) By November of 2011, when Plaintiff presented to Dr. Ashai with suicidal ideation and reported to have been drinking and not taking his medication, his GAF was assessed at 35 upon admission and 50 at discharge. The following week Plaintiff presented to psychiatrist, Ashraful Huq, M.D. and reported that, prior to his admission to the emergency room and treatment by Dr. Ashai, he had been drinking about one half a bottle of vodka daily, but that he was back on medications prescribed by Dr. Ashai. At that time, Dr. Huq assessed his GAF at 60. During Plaintiff's treatment with Dr. Rahman and LCSW Jordan, his GAF scores were assessed at between 50 and 55.

"A GAF of 51 to 60 signifies 'moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Snyder v. Astrue*, No. 07-CV-0763, 2009 WL 3381556, at *2 n.2 (N.D.N.Y. Oct. 16, 2009) (quoting Diagnostic and Statistical Manual of Mental Disorders-IV-TR, p. 34)). "While the ALJ is not allowed to rely on any test score alone, *see* 20 C.F.R. § 416.926a(e)(4)(i), in accordance with h[er] duty under 20 C.F.R. § 404.1520(3), the ALJ must consider the entire record." *Id.* Here, although the ALJ does not specifically address Plaintiff's GAF scores, the Court is not "left to speculate whether all the circumstances of [Plaintiff's] claim were thoroughly analyzed, or instead were

15

overlooked' by the ALJ." *Cf. Stewart v. Astrue*, No. 10-CV-3032, 2012 WL 314867, at *8 (E.D.N.Y. Feb. 1, 2012) (quoting *Armstead v. Chater*, 892 F. Supp. 69, 76 (E.D.N.Y. 1995)). Rather, the GAF assessments during periods of Plaintiff's abstinence are consistent with the moderate limitations included by the ALJ in her RFC. The lowest GAF score Plaintiff received was during a time when he was using alcohol and not taking his medications. Therefore, any failure by the ALJ to consider directly address Plaintiff's GAF scores is harmless.

For all of these reasons, the ALJ's RFC assessment is supported by substantial evidence.

### C. Whether the ALJ Erred at Step Five By Failing to Obtain the Opinion of a Vocational Expert

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 20-22 [Def.'s Mem. of Law].) The Court would add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ decided that there are jobs in the national economy that Plaintiff can perform, relying solely on the Medical-Vocational guidelines. Plaintiff argues that due to his extensive non-exertional limitations, as opined by Dr. Rahman and Dr. Duffy, the ALJ should have obtained the opinion of a vocational expert.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform his past work, there is other work which he could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers

16

from non-exertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606). However, it is important to note that "the mere existence of a non-exertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410–411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603).

Here, Plaintiff points to Dr. Rahman's opinion that he has marked and moderate limitations in most areas of mental functioning as well as Dr. Duffy's opinion that Plaintiff's "psychiatric problems 'may significantly interfere with [his] ability to function on a daily basis.'" (Dkt. No. 14, at 18 [Pl.'s Mem. of Law].) As indicated in Part IV.A. of this Decision and Order, the ALJ did not err in assigning less than controlling weight to the cited opinions of Dr. Rahman, noting that those opinions are both internally inconsistent as well as not supported by the record evidence, including the opinion of Dr. Duffy. Moreover, Plaintiff takes Dr. Duffy's opinion out of context. After concluding that Plaintiff had no limitations to his mental functioning, except that he "may have some difficulty making appropriate decisions at times *because of his substance abuse problems*," Dr. Duffy went on to conclude, that "[t]he results of the examination appear to be *consistent with substance abuse and some psychiatric problems* and this *may* significantly interfere with [Plaintiff's] ability to function on a daily basis at this time." (T. 254 [emphasis added].) Accordingly, the record evidence does not support a conclusion that Plaintiff's psychiatric problems cause non-exertional limitations that significantly limit his employment opportunities.

For these reasons, the ALJ did not err in his decision at step five of the sequential analysis by relying on the Medical-Vocational Guidelines.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 19, 2014
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge